## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TONI D.**[1] | Case No. 3:19-cv-820-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Robyn M. Rebers, ROBYN M. REBERS, LLC, P.O. Box 3530, Wilsonville, OR 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Benjamin J. Groebner, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Toni D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for Disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and remanded for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff was born on December 31, 1962 and was 52 years old on her alleged disability onset date. *Id.* Plaintiff graduated high school and has completed two years of college. AR 19, 187. Plaintiff protectively filed for DIB on January 27, 2017, alleging disability because of degenerative disc disease and stenosis beginning on September 28, 2015. AR 58, 60. The Commissioner denied Plaintiff's application both initially and upon reconsideration; thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 91-95, 97-99, 101-02. An administrative hearing took place on June 12, 2018. AR 26. On July 31, 2018, the ALJ issued a decision that Plaintiff was not disabled under the Social Security Act before her date last insured. AR 13-21. On July 31, 2018, the same date that the ALJ issued his opinion, Plaintiff requested a review of the ALJ's decision by the Appeals Council, and on April 24, 2019, the Appeals Council denied Plaintiff's request for review. AR 1-3. The ALJ's decision is thus the final decision of the Commissioner. Plaintiff seeks review of that decision.

## B. Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements for her DIB claim through December 31, 2015. AR 15. The ALJ then applied the sequential analysis process. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity after the alleged onset date, September 28, 2015. *Id.* At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc and joint disease. *Id.* The ALJ noted other impairments in the record that he categorized as non-severe: hypertension, hyperlipidemia, vitamin D deficiency, and complaints of bilateral knee pain. *Id.*

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 16. The ALJ considered Listing 1.04, disorders of the spine. *Id.* The ALJ also considered Plaintiff's diagnosis of adjustment disorder with depressed mood.

*Id.* Because Plaintiff was not diagnosed until October 31, 2017, well after her date last insured, the ALJ found that Plaintiff did not have a medically determinable mental impairment existing on or before Plaintiff's date last insured. *Id.* The ALJ found that Plaintiff's impairments do not satisfy the requirements for Listing 1.04 or any other disorder listed in Appendix 1. *Id.*

Continuing step three, the ALJ found that Plaintiff had an RFC for light work, except that "she could stand and walk four hours in an eight-hour workday. She could sit six hours in an eight-hour workday. She could occasionally climb ramps and stairs. She could never climb ladders, ropes, and scaffolds. She could occasionally stoop, kneel, crouch and crawl." *Id.* In reaching this conclusion, the ALJ considered Plaintiff's lumbar spine degenerative joint and disc disease and stenosis. AR 16-17. The ALJ also considered written medical evidence from Plaintiff's treating neurosurgeon Michael Sandquist, M.D. ("Dr. Sandquist") and medical opinion evidence from the state agency medical physicians Thomas W. Davenport, M.D. and Susan Moner, M.D. (collectively, "state agency medical consultants"). The ALJ considered Plaintiff's subjective symptom testimony, but discounted her statements about the intensity, persistence, and limiting effects of her symptoms. AR 18.

At step four, based on Plaintiff's RFC and an impartial vocational expert's ("VE") recommendation, the ALJ determined that Plaintiff could perform her past relevant work as a bookkeeper because it required only sedentary exertion. AR 19. Alternatively, at step five, based on testimony by the VE, the ALJ found that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform. *Id.* These include electrical accessories assembler, hand packager and inspector, and small products assembler. *Id.* As a result, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act from her alleged onset date through her date last insured. AR 21.

**DISCUSSION**

Plaintiff seeks review of the determination that she was not disabled. She argues that the ALJ erred by: (A) improperly discounting Plaintiff's subjective symptom testimony; (B) assessing a flawed RFC unsupported by substantial evidence; and (C) failing to call a medical advisor to testify at the administrative hearing. Each argument is addressed in turn.

**A.  Plaintiff's Subjective Symptom Testimony**

**1.  Applicable Law**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). Finally, if the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, the court may not engage in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Kirkruff v. Berryhill*, 2017 WL 1173910, at *2 (D. Or. March 28, 2017).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld even if not all the ALJ's individual reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 446 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, but not to the extent Plaintiff claimed. AR 17. Thus, the second step of the analysis required the ALJ to offer clear and convincing reasons to reject Plaintiff's testimony about the severity of her symptoms. The ALJ gave Plaintiff's symptom testimony less weight because: (a) her statements regarding the intensity and persistence of her pain were inconsistent with the record; and (b) her claimed limitations were unsupported by objective medical evidence.

#### a. Inconsistent Statements

Plaintiff argues that the ALJ erred by rejecting her subjective symptom testimony. The ALJ identified several of Plaintiff's statements that allegedly undermined the intensity, persistence, and limiting effects of her symptoms. For example, the ALJ noted that Plaintiff did not complain of back pain until September 28, 2015. AR 18. At the hearing, Plaintiff stated that she had a sudden onset of back pain on September 28, 2015 when she woke up at 3:00 a.m. in the morning to use the restroom. AR 33. She testified that she tried to get up and began "screaming bloody murder," experienced complete back lock, and that it took her husband an hour-and-a-half to get her from the bedroom to the living room in their 1,500 square foot home. *Id.* On September 28, 2015, Plaintiff went to the doctor complaining that "when she woke up this am she was in severe pain, took 1.5 hours to get put [sic] of bed. . . . [and] describes the pain as a

[sawing] feeling in her spine." AR 570. Consistent with Plaintiff's hearing testimony and medical records, Plaintiff's alleged onset date is September 28, 2015. AR 59. Plaintiff's hearing testimony and medical records confirm that she experienced a sudden onset of back pain on her alleged onset date, and therefore Plaintiff had no reason to complain of back pain before this date. Thus, the ALJ erred by giving less weight to Plaintiff's symptom testimony because she did not complain of debilitating back pain before her alleged onset date.

Next, the ALJ stated that Plaintiff's symptom testimony deserved less weight because she did not have any symptoms suggestive of S1 radiculopathy. The ALJ also noted that although Plaintiff initially experienced radiating leg pain, the leg pain quickly resolved. *Id.* In his chart note, Dr. Sandquist, Plaintiff's treating doctor, stated that Plaintiff has "a quite clear disc protrusion on the left at L5-S1 in a position to compress the left S1 nerve root. The problem is, she does not have any symptoms suggestive of S1 radiculopathy." AR 408. Because it is rare for a disc herniation to cause back pain without radiculopathy, Dr. Sandquist sent Plaintiff to get a diagnostic selective nerve root block. *Id.* Plaintiff reported that the nerve root block substantially helped her pain, but that her pain persisted. *Id.* Based on these results, Dr. Sandquist stated that "rarely, patients can have isolated back pain from disc herniations and I think this diagnostic block supports that she may fall into this category." AR 406. "Graphic and expansive" pain symptoms that cannot be explained on an objective, physical basis by a claimant's treating physician is a valid reason to give a claimant's symptom testimony less weight. *Batson*, 359 F.3d at 1196. Plaintiff, however, has repeatedly stated that her pain is concentrated in her back and she does not experience any significant leg pain. AR 303, 383, 340. Consistent with Plaintiff's complaints, Plaintiff's treating doctor confirmed that although her symptoms are atypical, the results of the diagnostic nerve root block suggest that she is one of the rare individuals whom

experiences back pain without radiculopathy. As a result, the ALJ erred in using Plaintiff's lack of radiculopathy and resolved leg pain to discount her subjective symptom testimony about her back pain.

The ALJ also gave Plaintiff's subjective symptom testimony less weight because Plaintiff initially declined to participate in recommended physical therapy. AR 18. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tomasetti*, 533 F.3d at 1039) (quotation marks omitted). Plaintiff was at first reluctant to participate in physical therapy because of concerns about the facility's cleanliness. AR 388. Plaintiff's treating doctor stated, however, that he offered Plaintiff "another referral for physical therapy, but [Plaintiff] is quite adamant that she does not want to go for now, though if that becomes a[n] impediment to further treatment [Plaintiff] states she will reconsider." AR 389. Plaintiff pursued numerous other treatment options, including osteopathic manipulation, steroid injections and nerve blocks. AR 272 (bilateral sacroiliac joint injection), 281 (nerve root block), AR 561 (osteopathic manipulation). Plaintiff then reconsidered physical therapy, and attended sessions in September and October 2016, once she exhausted all other conservative care options. Physical therapy did not help Plaintiff and two months later she elected to undergo an L5-S1 discectomy. *See* AR 372 (recognizing that Plaintiff has "been through a very thorough nonsurgical program thus far" and that Dr. Sandquist "think[s] the only remaining option, other than living with it, would be surgery").

Plaintiff exhausted her conservative care treatment options before she decided to participate in physical therapy. When physical therapy failed to offer her relief, Plaintiff

underwent surgery. The ALJ failed to articulate how Plaintiff's decision to undergo all other available conservative treatment options before participating in physical therapy, which Plaintiff delayed due to concerns about cleanliness, undermines her allegations of disabling back pain. Plaintiff offered an explanation for delaying pursuing physical treatment. Delaying physical therapy in favor of other conservative treatment options is not a clear and convincing reason to give Plaintiff's subjective symptom testimony less weight.

The ALJ also stated that reports in Plaintiff's medical records that she typically presents in "no acute distress" are inconsistent with her complaints of debilitating back pain. AR 18. The Ninth Circuit has mentioned chart notes describing claimants presenting in no acute distress as a factor in discounting both medical opinions and a claimant's subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("Dr. Young described Rollins as a '[w]ell developed, well nourished middle aged female in no acute distress' and prescribed a conservative course of treatment, including a recommendation to 'avoid strenuous activities.' These are not the sort of description and recommendations one would expect to accompany a finding that Rollins was totally disabled under the Act."); *see also Dattilo v. Berryhill*, 773 F. App'x 878, 881 (9th Cir. 2010); *Hasso v. Colvin*, 617 F. App'x 780, 781 (9th Cir. 2015); *Bartlett v. Colvin*, 2015 WL 2412457, at *2, 8 (D. Or. 2015). In each of these cases, however, claimants presenting in no acute distress was coupled with inconsistencies in symptom reports, activities of daily living, recommendations of a conservative courses of treatment, and suspicions of exaggerated symptoms and malingering. *Rollins*, 261 F.3d at 856; *Dattilo*, 773 F. App'x at 881; *Bartlett*, 2015 WL 2412457, at *2.

In comparison, Plaintiff's medical records that the ALJ cited to show that Plaintiff presented in no acute distress paint a much different picture. AR 257-60 (stating that Plaintiff's

"Affect is anxious, tearful at times. Awake and alert. Does not use assistance device to ambulate. . . . No acute distress. Gait is slightly antalgic" and that Plaintiff reported her back pain was 10 out of 10 and she had difficulty sleeping); AR 268-69 (reporting that Plaintiff's "Affect is anxious. Awake and alert. Does not use assistance device to ambulate. . . . No acute distress. Gait is slightly antalgic" and that Plaintiff reported joint pain, stiffness and weakness, and frustration with her chronic back pain); AR 388-90 (noting that although Plaintiff presented in no acute distress, she also reported that her back pain "is exacerbated by almost any movement, including rolling over in bed, getting up out of the bed or out of a chair, bending, twisting, etc." and noting positive SI provocation tests and an abnormal motor exam); AR 552 (noting that Plaintiff presented in no acute distress but stating that she was "still having horrible pain in low back and will be going in for steroid injections soon. Has been using heating pad a lot since it offers her a little relief."); AR 562 (stating that Plaintiff was in no acute distress but her "Sacroiliac joint appearance was abnormal sacral rotation to the left, sacral base is extended and showed tenderness to palpation of the sacroiliac joints."); AR 565 (presenting in no acute distress but reporting "muscle spasm of the lower back."); AR 668 (noting that Plaintiff was "in no acute distress leaning over exam table due to back pain."). Furthermore, during Plaintiff's March 2016 visit to the doctor, her medical records state that her back was tender to palpation over the facet joints, she had a positive straight leg raise test at 45 degrees, limited range of motion because of pain, and tenderness in her sacroiliac joint and hips. AR 260, 269.

Although an ALJ may consider a claimant presenting in no acute distress in assessing the weight given to a claimant's subjective symptom testimony, an ALJ may not simply cherry-pick evidence to show that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. *Holoham v. Massanari*, 246

F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in Holohan's

records . . . and ignored the many others that indicated continued, severe impairment."). The ALJ

cherry-picked statements in Plaintiff's medical records that she presented in no acute distress

while ignoring statements in those same chart notes describing ongoing, intense back pain.

Moreover, there is some question as to the applicability of the generic chart note of "acute

distress" to chronic conditions such as Plaintiff's. *See, e.g.*, *Mitchell v. Saul*, 2020 WL 1017907,

at *7 (D. Nev. Feb. 13, 2020), *report and recommendation adopted sub nom. Mitchell v.

Berryhill*, 2020 WL 1017899 (D. Nev. Feb. 28, 2020) ("Moreover, the court agrees with Plaintiff

that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from

the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, 2019

WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not

undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with

chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are

chronic, not acute." (citation to the administrative record omitted)). Therefore, the generic chart

note of "no acute distress" is not a clear and convincing reason to discount Plaintiff's symptom

testimony.

Lastly, the ALJ discounted Plaintiff's subjective symptom complaints because her

surgery was "minimally invasive"[2] and one of her chart notes indicated she had plans to travel

for a couple of weeks. AR 18. When discounting subjective symptom testimony, an ALJ's

reasoning must be "sufficiently specific to allow a reviewing court to conclude the adjudicator

---

[2] "In minimally invasive surgery, doctors use a variety of techniques to operate with less damage to the body than with open surgery. In general, minimally invasive surgery is associated with less pain, a shorter hospital stay and fewer complications." *Minimally invasive surgery*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/minimally-invasive-surgery/about/pac-20384771 (last visited April 3, 2020).

rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46. The ALJ failed to articulate how the characterization of Plaintiff's L5-S1 discectomy as "minimally invasive" undermines her subjective symptom complaints. The Court is unsure how the size of the incisions used to perform Plaintiff's discectomy bears on her subjective symptom testimony, and the ALJ failed to articulate his reasoning. Thus, Plaintiff's "minimally invasive" surgery is not a clear and convincing reason to discount her subjective symptom testimony.

In August 2016, Dr. Sandquist noted that Plaintiff "very much wants to have surgery before the end of the year if at all possible . . . she mentions that she is going to travel to the Southeast for a couple weeks next month, so I will plan on seeing her back toward the end of November." AR 406. Plaintiff's chart note that she had plans to travel to the Southeastern United States for a few weeks does seem to undercut Plaintiff's allegations of disabling pain. *See Tommasetti*, 533 F.3d at 1040 (upholding an ALJ's decision to discount a claimant's subjective symptom testimony because of his reported "ability to travel to Venezuela for an extended time to care for an ailing sister."). At the hearing, however, the ALJ did not ask about Plaintiff's travels, what her trip entailed, or if Plaintiff even went on her trip. "An ALJ may consider inconsistent statements by a claimant in assessing her credibility . . . . A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017) (as amended) (citing *Robbins*, 466 F.3d at 883-84). Because Plaintiff's reported plans of traveling for a couple of weeks is a single discrepancy in her medical records, and a weak one at that, the ALJ erred in using this single discrepancy to discount all of Plaintiff's subjective symptom testimony. *Burrell*, 775 F.3d at 1140 ("Because the ALJ's other reasons . . .

are not supported by substantial evidence, and because this reason is weak on the record, we

conclude the ALJ erred . . . .").

### b.  Objective Medical Evidence

The ALJ found that Plaintiff's "medical record does not support the degree of debilitation

alleged by the claimant in this case." AR 17. An ALJ may consider the lack of corroborating

objective medical evidence as one factor in "determining the severity of the claimant's pain."

*Rollins*, 261 F.3d at 857. The ALJ may not, however, reject subjective pain testimony solely

because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883;

*see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your

statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work solely because the available objective medical

evidence does not substantiate your statements"). Because the Court has found the other reasons

the ALJ provided not to be clear and convincing, even if the objective medical evidence did not

support Plaintiff's alleged limitations, the ALJ may not solely rely on this to discount Plaintiff's

subjective symptom testimony.

### 3.  Harmless Error

The ALJ did not offer clear and convincing reasons for discounting Plaintiff's back pain

subjective symptom testimony. An error is harmless if it is "inconsequential to the ultimate

nondisability determination." *Molina*, 674 F.3d at 1115; *see also Robbins*, 466 F.3d at 885

(noting that an error is harmless if it is "clear from the record the error was inconsequential to the

ultimate non-disability determination"). A court should not automatically reverse on account of

error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th

Cir. 2012). Plaintiff testified that she cannot lift a gallon of milk out of the refrigerator, has

trouble standing still in an upright position, and that she can grocery shop for about thirty

minutes before having to go sit in the car. AR 39, 40, 43. Plaintiff also testified that sitting and standing are her most painful positions, she cannot sit down in the mornings when her pain is the worst, and that she must be able to lay on her side to relieve her pain. AR 36, 41. She stated that she cannot clean her own home, and that cleaning her bathroom takes approximately three days. AR 45 ("If I clean a bathroom, it takes me three days . . . I can go in and do the whole thing if I want to pay the price for that. That could mean that I'm on my side for the next two days."). Plaintiff's RFC, however, concluded that she can stand or walk for about 4 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and perform light work including lifting and carrying 20 pounds occasionally and 10 pounds often. AR 16. Because Plaintiff has identified limitations to which she testified that were not incorporated into the RFC, the ALJ's rejecting Plaintiff's testimony was not harmless.

**B.  The ALJ's RFC Formulation**

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Because the ALJ erred in considering Plaintiff's subjective symptom testimony, the RFC is not based on a consideration of all of the relevant evidence and must be reconsidered on

remand. As a result, the ALJ also erred in relying on the VE testimony based on the RFC and

resulting conclusion that Plaintiff could perform her past relevant work as a bookkeeper, and that

there were other significant jobs in the economy that Plaintiff could perform. *See Flores v.

Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (ruling that a hypothetical question posed to a

vocational expert must "include all of the [plaintiff's] functional limitations, both physical and

mental"); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's

hypothetical does not reflect all the [plaintiff's] limitations, then the . . . testimony has no

evidentiary value . . . .").

## C.  Medical Expert Testimony

### 1.  Applicable Law

Plaintiff argues that the ALJ erred by failing to comply with SSR 83-20[3] by not calling a

medical advisor to testify at the hearing.

SSR 83-20 requires, in relevant part,

> In addition to determining that an individual is disabled, the
> decisionmaker must also establish the onset date of disability.
>
> * * *
>
> *Precise Evidence Not Available—Need for Inferences*
>
> In some cases, it may be possible, based on the medical evidence
> to reasonably infer that the onset of a disabling impairment(s)
> occurred some time prior to the date of the first recorded medical
> examination, e.g., the date the claimant stopped working. How
> long the disease may be determined to have existed at a disabling
> level of severity depends on an informed judgment of the facts in
> the particular case. This judgment, however, must have a
> legitimate medical basis. At the hearing, the administrative law
> judge (ALJ) should call on the services of a medical advisor when
> onset must be inferred. If there is information in the file indicating

---

[3] SSR 83-20 was rescinded in October 2018. Because the ALJ issued his decision in July
2018, SSR 83-20 still applies.

> that additional medical evidence concerning onset is available,
> such evidence should be secured before inferences are made.
>
> If reasonable inferences about the progression of the impairment
> cannot be made on the basis of the evidence in file and additional
> relevant medical evidence is not available, it may be necessary to
> explore other sources of documentation. Information may be
> obtained from family members, friends, and former employers to
> ascertain why medical evidence is not available for the pertinent
> period and to furnish additional evidence regarding the course of
> the individual's condition. . . . The impact of lay evidence on the
> decision of onset will be limited to the degree it is not contrary to
> the medical evidence of record.
>
> * * *
>
> The onset date should be set on the date when it is most reasonable
> to conclude from the evidence that the impairment was sufficiently
> severe to prevent the individual from engaging in SGA (or gainful
> activity) for a continuous period of at least 12 months or result in
> death. Convincing rationale must be given for the date selected.

SSR 83-20, *available at* 1983 WL 31249.

The Ninth Circuit "explained this ruling to mean that '[i]n the event that the medical

evidence is not definite concerning the onset date and medical inferences need to be made,

SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all

evidence which is available to make the determination.'" *Sam v. Astrue*, 550 F.3d 808, 810 (9th

Cir. 2008) (alterations in original) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th

Cir. 1991)); *see also Diedrich v. Berryhill*, 874 F.3d 634, 638-39 (9th Cir. 2017) ("Relying on

SSR 83-20, we have held that where a record is lacking and ambiguous as to the onset date of

disability, 'the ALJ must call a medical expert to assist in determining the onset date.'") (quoting

*Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998)). The Ninth Circuit

has set some limitations on this requirement. "SSR 83-20 does not require a medical expert

where the ALJ explicitly finds that the claimant has *never* been disabled." *Sam*, 550 F.3d at 809

(emphasis added). When an ALJ finds that a claimant is not disabled only through the date last insured, however, then SSR 83-20 may apply. *See Diedrich*, 874 F.3d at 638-39.

### 2.  Analysis

The ALJ found that Plaintiff was not under a disability from her alleged onset date through her date last insured. AR 13. Thus, the relevant question under SSR 83-20 is whether the medical record was so lacking and ambiguous as to the onset date to trigger the requirement for a medical consultant. Plaintiff argues that under *Diedrich* the ALJ needed to have a medical advisor testify at the hearing because Plaintiff had a remote onset date of September 28, 2015 and had limited evidence of her disability before her date last insured, December 31, 2015. Plaintiff also argues that a medical advisor was needed because of the close proximity between Plaintiff's alleged onset date and her date last insured. The Commissioner responds that the ALJ was not required to have a medical expert testify at the hearing because Plaintiff's case is distinguishable from *Diedrich*. The Commissioner argues that unlike *Diedrich*, there is clear medical documentation of Plaintiff's alleged onset date and the ALJ did not find that Plaintiff's condition was disabling, thus the ALJ was not required to have a medical advisor testify at the hearing.

When the date of onset is clear and the ALJ may determine a claimant's alleged onset date without speculation, medical advisor testimony is not required. *See Diedrich*, 874 F.3d at 639 ("Sometimes, the onset of disabilities occurs all at once, and the date of onset is clear. For example, when a claimant is permanently injured in a car wreck, there is rarely a dispute over the date of the crash. But sometimes conditions build slowly over time. In such cases, it helps to have medical expertise to determine when the symptoms became severe enough so that the claimant became disabled under Title II."). Like a car wreck, Plaintiff's back pain began suddenly when she woke up in severe pain on September 28, 2015, her alleged onset date.

Unlike *Diedrich*, Plaintiff's back pain did not slowly progress over time. Nor are there any large gaps in her medical records that would require a medical advisor to help identify her onset date. Because the "onset of [Plaintiff's] disabilities occur[ed] all at once" the ALJ could determine Plaintiff's alleged onset date without speculation, and thus the ALJ was not required to have a medical advisor testify at the hearing. *Id.*

## D.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court

retains flexibility, however, and is not required to credit statements as true merely because the

ALJ made a legal error. *Id.* at 408.

Here, the ALJ did not provide sufficient reasons supported by substantial evidence in the

record for discounting Plaintiff's subjective symptom testimony about her back pain. The record

is not, however, free from all conflicts and ambiguities. Thus, the matter is remanded for further

proceedings.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 21st day of April, 2020.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
